------o------

## No. 3530.

### (Court of Appeal, Parish of Orleans.)

## MRS. MARY IMWOLDE vs. HENRY STERN AND COMPANY.

Appeal from Civil District Court, Division "C."

Dinkelspiel and Hart, and Frank S. Drolla, for Plaintiff and Appellant.

Chas. Rosen, for Defendant and Appellee.

1. Issues of fact only are involved herein.
2. State claims long withheld from presentation or prosecution will require strong evidence to overcome the adverse presumption arising from their staleness.

ESTOPINAL, J. Plaintiff sued for $640.91, alleged to have been overpaid defendants by her in the course of business.

Plaintiff conducted a shoe store, and during the thirty years in which she was so engaged she did business with the wholesale shoe house of defendants.

Her claim is predicated on three transactions, as follows, to-wit:

1st. That on March 2nd, 1894, being indebted to defendants in the sum of $1457.84, she paid them by delivery of a note for

343

$1,500.00, in favor of her daughter, which, plus the interest, amounted to $1,663.02, making a difference in her favor between said debt of $1,457.84 of a sum amounting to $205.18, for which she received no credit from defendants and for which they have never in any way accounted to her.

2nd. That on March 8th, 1894, she returned goods and received a credit memorandum for $50.40, and that she paid in cash the sum of $50.40 on March 12th to cover said credit, making defendants in this instance her debtors in the sum of $100.80.

3rd. That between December, 1895, and May, 1896, she bought goods from the defendants aggregating $2160.25, and that between April 11th, 1896, and December 21st, 1896, she paid on account thereof the sum of $2520.16; that on this account, interest was charged her without warrant, but, computing legal interest on the merchandise bought and allowing it to defendant and doing likewise in favor of plaintiff on the payments made, the difference in favor of plaintiff would then be $344.93.

The defendants answered, denying any indebtedness, as well as urging the plea of prescription, which latter plea, however, is not sustained here by reason of the fact that this section is one for repetition and therefore personal and prescriptable by ten years.

Plaintiff's demand was rejected by the lower court, and she has taken this appeal.

It is true that, even though the claims of plaintiff are from seven to nine years old, there lies no legal impediment to a judicial proceeding which she might invoke to recover, but it will not be disputed that claims of that or any other character brought to life after such a long and peaceful slumber will require strong evidence to recover the adverse presumption arising from their staleness, to make them worthy of consideration. The witnesses were seen and heard by our learned brother of the Court a qua, and we are disposed on that account, especially in the instant case

344

where plaintiff and her son appear to have been so careless in giving testimony, to adopt his conclusions.

Plaintiff sets out in her petition each item of her demand boldly and unequivocally, the second as boldly as the first, and the third as boldly as those two, and yet on the trial it is shown that the first claim of $205.18, notwithstanding that plaintiff and her son both swore with particular detail and positiveness as to same, was without the remotest foundation. Plaintiff testifies:

"Q. Now how did you pay that bill?

"A. There was $1,457.84 I paid through a note by my daughter. My daughter got the money from the Penn Mutual Insurance Company.

"Q. When your daughter got that money, what did she do with it?

"A. She got a check.

"Q. What did she do with that check?

"A. She signed it and gave it to Henry Stern & Co., and they gave us a note.

"Q. How much was that note.

"A. Fifteen hundred dollars, bearing six per cent. interest.

"Q. *And when you made this settlement through Henry Stern Company for this bill of $1,457.84, did they give you back any part of that note?*

"A. *No not a cent. and no interest either.*"

The proof is that the defendants had parted with their books, selling the same to the Southern Scrap Material Company, but fortunately for themselves, and the court, interested in dispensing even justice between litigants, the defendants discovered certain books showing trial balance and otherwise explaining the note transaction and showing the absolute falsity of plaintiff's sworn testimony, and we view this testimony in such a way as to preclude from our mind the idea that plaintiff testified as she did from a mere misapprehension of the transaction.

The proof is that the account of $1,457.84 was paid by a check

345

in favor of plaintiff drawn by Toppino, Seidenbach & Larose for $1113.40, and that the balance was paid in cash.

Plaintiff is not alone in the effort to establish defendants' liability in this instance, but is seconded by her son, whom she employed in her store, who is unable to be positive about anything, who in fact admits that he knows nothing about the other transactions, but does know all about the $1,500.00 note.

We have examined the testimony of this witness carefully and it has impressed us a great deal, not in the direction, however, favorable to the plaintiff.

We find a man of thirty-seven years testifying in a childish fashion and exhibiting the absolute absence of the slightest business tact.

A part of his duty was to go to the store of Henry Stern & Co. to pay bills. His mother would give him a bag containing money and a bill. These he would hand to the first man whom he found at the cashier's desk. This person would open the bag, count the money, credit the account on the bill itself, return it to the bag which was then closed and handed to him and by him taken back to his mother's store. He testifies that he never knew what the bag contained which he carried to defendants, never watched the count of the cash or noticed the acknowledgements made on the bill, or the character of the receipt given.

This duty, performed as witness claims to have performed it, would have been just as satisfactorily and intelligently done by a person blind, deaf and dumb.

When this witness' attention is called to the fact that a certain bill is not credited as he claims was always done, but that a receipt was given instead, the witness is at a loss to explain, but says: "I was just like an honest laboring man."

Finally when it is suggested to him that he knows nothing about these transactions, he answers: "No, sir, *the only thing I do know is about this fifteen hundred dollar note,*" and then the

346

witness explains about the note of $1.500.00 and accrued interest, which was imputed to the payment of a bill of $1,457.84, and that when his mother returned, she had gone to defendants in person to make this settlement, he said to her, (I said) "where is your interest and where is your change?"

Here we have the spectacle of a business man, whose interest or his mother's were a matter of small concern to him up to this time, but who suddenly comes to life and anxiously inquires about balances and interest.

It was fortunate that at this point, the defendants, armed with books, checks, etc., old and rusty, but messengers of truth withal, came into court and with their aid were able to establish in an incontestable way that the plaintiff was without cause of complaint, and that the account had been honestly and satisfactorily closed.

The defendants were so successful in clearing their skirts and escaping not only the payment of a considerable sum of money, but what was more important to them, vindicating their character and buisness standing, that counsel for plaintiff abandoned this portion of their claim, and in his brief asks judgment for $455.73, instead of $640.91.

We do not agree with the learned counsel for plaintiff that none but questions of fact are involved, but admitting that to be so, we venture to say that the testimony of plaintiff, which we have in part already reviewed, is so tainted and given in such a way as to make it unworthy of belief, and makes very questionable the *prima facie* evidence of payment relied upon by plaintiff in the shape of a receipt, to which we will shortly give our attention.

In the light of what we have discovered in reference to the first claim we are inclined to be guided by the explanation of the other claims as made by defendants, who appear to have made an honest effort during the trial of this cause to straighten out the tangle.

The plaintiff must make out her case with legal certainty, and in the case at bar, where the incidents giving rise to this litigation are very old, it will not suffice for plaintiff to say that she remembers nothing, not even a circumstance so extraordinary as a fire on her premises and the sale of damaged goods to the amount of over one thousand dollars, but that she holds receipts which on their face show payments in excess of her indebtedness.

On March 8th, 1894, plaintiff returned goods worth $50.40 and was credited with the amount, but she produced a receipt of date March 12th, 1894, four days later, showing payment of $50.40.

The matter is satisfactorily explained to us by the statement of witnesses for the defendants, who states that "when customers generally brought up their bills and paid the amount, the bill was generally stamped paid. She brought up this bill with a good many others and paid a certain amount, and in stamping the bills I simply stamped those as paid. If I had entered in the cash book $50.40 as paid by Mrs. Imwolde, the party who took the trial balance from the bills in the book would have been $50.40 over in his cash."

The cashier of defendant is asked finally whether he remembers as a fact whether or not that particular bill was paid, and he answered, "no it was not paid."

It is reasonable to suppose, and for this Court to believe, that a person, even making allowance for dense ignorance, would, knowing that she was entitled to a determinate credit, return four days after the same had been made and pay the same amount in cash. Admitting, *arguendo*, that she should make such an erroneous settlement, would she not, while the matter was still fresh in the minds of those concerned, demand an explanation and a correction? What is the proof that plaintiff ever made any demand whatsoever in reference to the matter, although she subsequently had numerous business transactions with defendant?

348

In Wood vs. Egan, 39 A. 684, the court said: "A stale claim long withheld from presentation or prosecution, until he against whom it is preferred has died, must be established with more than reasonable certainty. An unfavorable presumption is created by the delay. It can be removed only by particularly conclusive testimony."

Again, in Jenkins vs. Caddo, 7 An. 559, the Court said: "Staleness will cast a shade over plaintiff's pretentions justifying more satisfactory showing than if claim was presented earlier."

Taking up the last claim of plaintiff based upon a receipt of date June 24th, 1896, we find that on the trial below counsel for plaintiff urged objections to the admission of parol testimony explanatory of the receipt, maintaining that nothing could be read into it. The receipt is only *prima facie* evidence of payment, and the trial and proper determination of a cause cannot be permitted to depend altogether upon the ability of one party to a suit to close the mouth of his adversary, especially when courts perceive that in the interest of justice certain facts should be known which the other party seeks to have excluded.

In the peculiar case presented here, we deem it competent to permit an explanation of the transaction leading to the giving of this receipt by defendants to plaintiff.

Maurice Stern, defendants' cashier, testifies:

"Q. Now, I show you particularly a bill of February 1, 1896, for $388.45, stamped 'Received Payment, June 24th, 1896, Henry Stern & Company, per M. S.' Is that your signature?

"A. Yes, sir.

"Q. Did you receive on that particular date the entire amount of $388.45?

"A. Not necessarily so, if there was some other amount paid on that date.

"Q. Or before that?

"A. Yes, sir, before that."

And this witness goes on to explain and does identify certain payments on account of bill of $388.45, which had been made by plaintiff and for which separate receipts found in the record had been given and which had been reduced to $81.58, as evidenced by a statement rendered by defendant a few days before.

Defendants' witnesses deny that plaintiff paid them $388.45 on the day on which the receipt purports it was paid, but testify that partial payments were made, separate receipts given and that finally when the bill was paid in full it was receipted by being stamped "paid."

The evidence by defendant as to the conditions relative to the particular claim under discussion is not as convincing as it might be, but it is more than plausible, and plaintiff, upon whom is the burden to prove affirmatively and with legal certainty the correctness of her claim, having failed absolutely to do so, we are constrained to deny her demand.

We have discussed this case at too great length already, or else we should incorporate as part of this opinion some bits of testimony which fell from the lips of plaintiff and her son, the reading of which shows it to be at once ridiculous and amazingly absurd.

Our appreciation of the testimony leads up to the same conclusion reached in the lower court, and the judgment there rendered is affirmed at plaintiff's costs.

May 29th, 1905.

Rehearing refused, June 27th, 1905.